**David W. GOLT, Plaintiff,**

v.

**CITY OF SIGNAL HILL, etc.,
et al., Defendants.**

**No. 00–6956 CM (SHX).**

United States District Court,
C.D. California.

March 7, 2001.

---

Etan Z. Lorant, Etan Z Lorant Law Offices, Encino, CA, for plaintiff.

Glen E. Tucker, Daniel L. Morgan, Glen E. Tucker Law Offices, Pasadena, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BROUGHT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(b)

MORENO, District Judge.

Presently before the Court is Defendants City of Signal Hill, Signal Hill Police Department, and Officers Wolfe, Brown, Smith, Boksa and Chambers' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(b).

Having read and considered the moving papers, the opposition, and the reply, and all other admissible evidence, the Court hereby *grants* Defendants' Motion for the following reasons.

### I.

### *Factual and Procedural Background*

Plaintiff David W. Golt filed this Complaint on June 27, 2000. Then, on January 23, 2001, Defendants City of Signal Hill, Signal Hill Police Department, et al., filed their Motion for Summary Judgment, or in the alternative, Summary Adjudication. The Court heard oral argument on this matter on February 26, 2001. The background facts are as follows.

On August 5, 1999, while on patrol, Signal Hill Police Officers, Officer Smith and Officer Wolfe, observed a white jeep with no license plates. The officers stopped the white jeep for violating California Vehicle Code § 5200, driving without a license plate. The officers noticed that a second vehicle, a white pickup truck, pulled to the curb about 100 feet behind the police vehicle.

While Officer Wolfe approached the passenger side of the jeep, Officer Smith asked Plaintiff for his driver's license and registration. At that time, Plaintiff told Officer Smith that he was a bail recovery agent and that he was carrying a firearm. Plaintiff also stated that the occupants of the pickup truck, Tim Golt and Dan Franco, were also bail agents. Upon learning that Plaintiff was carrying a firearm, the officers asked Plaintiff and his passenger, Richard Gonzales, to place their hands in plain view.

After back up arrived, Officer Smith ordered Plaintiff to get out of the jeep with his hands up. Once Plaintiff stepped outside the jeep, Officer Smith noticed a 9mm Smith & Wesson semi-automatic handgun inside a leather holster located on Plaintiff's right side. The weapon was loaded with 13 live rounds. Plaintiff told the offi-

cers that he was authorized to carry the firearm because he was a bail agent and was on his way to make an arrest. In fact, Plaintiff was stopped one-half block from his destination. Plaintiff did not have in his possession a permit or identification card showing that he was authorized to carry the firearm.

Lisa Golt, an off-duty Los Angeles police officer and also Plaintiff's sister, then arrived at the scene. Lisa Golt cited to the officers California Penal Code § 12031(k), which she represented as authorizing a bail agent to carry an unpermitted loaded firearm. *See* Doose Decl. at ¶ 7. Officer Doose then requested Signal Hill Dispatch to contact the Los Angeles County Sheriff's Department and Long Beach Police Department Watch Commander to determine when, if ever, a bail agent is authorized to carry a firearm. *See* Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law (hereinafter "Pl's Statement"), at ¶ 9, and Doose Decl. at ¶¶ 8–9. Both departments informed the Signal Hill Dispatch that they had no knowledge of any such authority. *See* Doose Decl. at ¶ 10.

After receiving this information, Officer Smith arrested Plaintiff for alleged violation of California Penal Code § 12025(a), carrying a concealed firearm, and California Penal Code 12031(a)(1), carrying a loaded firearm.

## II.

### *Applicable Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In a trilogy of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

## III.

### *Discussion*

Plaintiff brings three separate claims under federal law. These are: 1) a claim for maintaining an unconstitutional policy; 2) a claim for deprivation of Plaintiff's constitutional rights arising from being falsely arrested and imprisoned; and 3) breach of Plaintiff's Second Amendment right to bear a firearm. All of these claims are subject to summary adjudication for the reasons stated below.

### A. Section 1983 Claim for Violation of Fourth, Fifth and Fourteenth Amendments

Plaintiff's principal claim is for violation of his rights under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution. The gravamen of this claim appears to be that "Defendants falsely arrested and imprisoned Plaintiff on August

5, 1999." *See* Complaint at ¶ 16. Defendants maintain summary adjudication is appropriate because they possess qualified immunity.

■ The false arrest claim is summarized as follows. Plaintiff maintains that as a bail agent, he is authorized to carry a loaded firearm pursuant to California Penal Code § 12031(k). This Section states in relevant part, "Nothing in this section is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest." *See* California Penal Code § 12031(k). There is no California case law interpreting § 12031(k) on the issue of whether a bail agent may carry a loaded firearm while performing his duties. However, an opinion letter written by the California Attorney General states:

> [S]ection 12031(k) ... does not cover bail agents per se, but bail agents may come within its exemption language depending upon their conduct ... Accordingly, a bail agent 'engaged in the act of making or attempting to make a lawful arrest' (§ 12031, subd. (k)) may carry a loaded firearm.

*See* 81 Ops.Cal.Atty.Gen. 257 (July 29, 1998).[1] Because it was clear Plaintiff was a bail agent in the process of arresting a fugitive, his arrest violated his constitutional rights.

However, the Court finds Plaintiff's acts fall outside even the broadest part of § 12031(k), namely, "attempting to make an arrest." The California Jury Instructions stress a distinction between "attempt" and "mere preparation." Acts constituting attempt "must be an immediate step in the present execution of the criminal design ..." CALJIC 6.00 p. 275.[2] The Supreme Court of California has followed this definition of attempt. *See e.g. People v. Dillon,* 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697 (1983). The Ninth Circuit's Model Jury Instructions define attempt similarly, but also state that attempt means "the defendant did something which was a substantial step toward committing the crime ..." Ninth Circuit Model Jury Instructions § 5.3

Using these definitions of attempt, the Court finds Plaintiff's acts fall short of "attempting to make an arrest." When he was arrested for possessing a loaded gun, Plaintiff was in his car a half-block away from where the fugitive was located. At that time, Plaintiff was not as a matter of law, attempting to make an arrest. Section 12031(k) creates an immunity for only a specific and limited period of time, and does not immunize the "travel time" between the bail agent's origin and his destination. The Court considers Plaintiff's travel time to the location where the fugitive is located as mere preparation distinguishable from taking immediate and substantial steps in the execution of an arrest. The § 12031(k) exception does not apply, therefore Defendant officers had probable cause to arrest Plaintiff.

■ Summary Adjudication is also appropriate because Defendants possess qualified immunity. The Ninth Circuit has capsulized the test for qualified immunity from liability by public officials in the following manner: "1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). Moreover, *Act Up!* provides that the "threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court." *Id.* at 873 (citing

---

1. The opinion letter is in response to the following question posed to the Attorney General's office by the Ventura County District Attorney: "What duties may a bail agent perform for a surety and may he carry a loaded firearm while performing such duties?"

2. Importantly, the Attorney General's opinion letter stresses that it does not address what constitutes the act of making or attempting to make an arrest.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Finally, the "plaintiff shoulders the burden of proving that the rights he claims are 'clearly established.'" *Brewster v. Bd. of Educ. of Lynwood Unif. Sch. Dist.,* 149 F.3d 971, 977 (9th Cir.1998) (citing *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

 Clearly established means that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). It is clear that the Defendant officers did not understand they were violating Plaintiff's right as a bail agent to possess a loaded firearm for the purposes of making an arrest. The officers arresting Plaintiff made inquiries to two separate police departments regarding the law as applied to bail agents.[3] *See* Pl's Statement at ¶ 9; Doose Decl. at ¶¶ 8, 9; Smith Decl. at ¶ 28. In addition, there are no published cases that address either § 12031(k)'s application to bail agents or the Attorney General's opinion letter. Therefore, Defendants are entitled to qualified immunity and summary adjudication is granted in the alternative.

### B. Unconstitutional Policy Claim

 Plaintiff also brings a claim against Defendant City of Signal Hill for having "maintained a policy permitting the occurrence of the type of wrongs described herein." *See* Complaint at ¶ 10. He alleges that based on the principle established in *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Signal Hill is liable for injuries Plaintiff sustained. *See* Complaint at ¶ 10. City of Signal Hill has allegedly maintained policies of making unlawful arrests; using excessive force when making arrests; improperly disciplining officers; improperly investigating complaints; and improperly selecting, training and supervising officers. *See* Complaint at 11. Defendants insist this claim fails because Plaintiff has not presented any supporting evidence.

 In *Monell,* the Supreme Court recognized that a municipality may be liable for maintaining a particular policy. In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) the Supreme Court concluded that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197 (emphasis added). Also, *Canton* stressed that the "first inquiry in any case alleging municipal liability under § 1983 is [ ] whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385, 109 S.Ct. 1197. In determining a causal connection, the Ninth Circuit has looked at whether the injury was foreseeable. *See McDade v. West,* 223 F.3d 1135, 1142 (9th Cir.2000) (citing *Van Ort v. Stanewich,* 92 F.3d 831, 837 (9th Cir.1996)).[4]

The only evidence Plaintiff offers in support of this claim is that Signal Hill admitted that it provides no training or instructions regarding a bail agent's authority to carry a weapon. *See* Opp'n Ex. E. The

---

3. This assumes that the Attorney General's interpretation of 12031(k) is the same one courts would reach. The Attorney General's opinion itself is not legal authority, but is only entitled to "great respect." *See Wenke v. Hitchcock,* 6 Cal.3d 746, 751–52, 100 Cal. Rptr. 290, 493 P.2d 1154 (1972); *Noguera v. North Monterey County Unified School Dist.,* 106 Cal.App.3d 64, 68 n. 3, 164 Cal.Rptr. 808 (1980).

4. *Van Ort* set out the four elements required to establish municipal liability for failing to act to preserve constitutional rights. These are "1) that [the plaintiff] possessed a constitutional right of which he was deprived; 2) that the municipality had a policy; 3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and 4) that the policy is the 'moving force behind the constitutional violation.'" *Id.* at 835.

Court finds that Plaintiff has not presented any credible evidence to suggest that Signal Hill could in any way have foreseen the injury that arose in this case. First, Plaintiff's proffered interpretation of 12031(k), assuming it is the law, does not appear to be remotely well-established. Second, the Court finds the events in this case are particular and not as a matter of law foreseeable.[5] The facts and the record demonstrate that Signal Hill could not have foreseen Plaintiff's injury. Therefore, Summary Adjudication must be entered as to this claim.

### C. Second Amendment Claim

 Plaintiff's cause of action under the Second Amendment essentially states that Defendants' actions impinged upon his right to bear arms. *See* Complaint at ¶ 22. Plaintiff also maintains that this right is codified in the California Penal Code § 12031(k). However, the Ninth Circuit has made clear that the right to bear arms is a right held by the states, and does not protect the possession of a firearm by a private citizen. *See Hickman v. Block,* 81 F.3d 98 (9th Cir.1996) *cert. denied* 519 U.S. 912, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996). *Hickman* stressed that "[b]ecause the Second Amendment guarantees the right of the states to maintain armed militia, the states alone stand in the position to show legal injury when this right is infringed." *Id.* at 102. It follows that Plaintiff cannot show legal "injury" to his Second Amendment right, therefore this claim fails.

### D. Dismissal of State Law Claims

Because the Court has granted Summary Adjudication as to all of the federal claims, the remaining claims in this case arise under state law. At oral argument, the parties acknowledged that the parties are not diverse. The Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

### IV.

#### *Conclusion*

For all the above reasons, the Court hereby *grants* Defendants' Motion for summary Adjudication as to Plaintiff's first, second, and third causes of action. The remaining claims are *dismissed* due to lack of subject matter jurisdiction.

IT IS SO ORDERED.

---

5. As the Ninth Circuit observed in *Van Ort,* although the question of proximate cause is sometimes for the court and sometimes for the jury, "the court decides whether reasonable disagreement on the issue is tenable." *Van Ort,* 92 F.3d at 837 citing *Springer v. Seaman,* 821 F.2d 871, 876–77 (1st Cir.1987);

*see also McDade,* 223 F.3d at 1142 (affirming district court's order granting defendant summary judgment and finding that plaintiff failed to show defendant could have foreseen the injury). Here, there is no room for reasonable disagreement on the issue of proximate cause.